O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENCOMPASS INSURANCE COMPANY, ) <br> ) <br>                Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> JAMES NUNLEY; MICHELLE ) <br> HUNLEY; LORI BRAGG; NUNLEY ) <br> RACING LLC; GREAT VALLEY ) <br> BUILDERS, INC.; LA TULA ) <br> INVESTMENTS, LLC; DRIVEN ) <br> MOTORSPORTS; SCORE ) <br> INTERNATIONALL, INC.; KARLA ) <br> ERIKSSON; TRENT ERIKKSON, by ) <br> and through his Guardian ad ) <br> Litem, KARLA ERIKSSON; and ) <br> TREVOR ERIKSSON, by and ) <br> through his Guardian ad ) <br> Litem, KARLA ERIKSSON, ) <br> ) <br>                Defendants. ) <br> _____ ) | Case No. CV 14-06598 DDP (ASx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS** <br><br> (DOCKET NUMBERS 13, 14 & 27) |

    Presently before the Court are Defendants' Motions to Dismiss or Stay Proceedings. (Dkt. Nos. 13, 14, 27.) Having considered the parties' submissions and heard oral arguments, the Court adopts the following order.

///

///

**I.   BACKGROUND**

This case arises out of an automobile accident that took place in the vicinity of an off-road race in Mexico on November 25, 2012. (Defs.' RJN, Ex. A, ¶ 1.)  Lori Bragg, who was driving, lost control of the vehicle, which rolled several times. (Id. at ¶ 2.) One of the occupants, Mark Eriksson, was killed in the accident. (Id.)  His survivors, Karla, Trent, and Trevor Eriksson, filed a wrongful death suit against Bragg. (Id. generally.)  The suit also named as defendants Driven Motor Sports, allegedly the "sponsor" of Bragg's racing team, and Score International, allegedly the "sanctioning body" of the off-road race. (Id. at ¶¶ 9, 11.)  These two defendants are sued under a theory of negligent entrustment.

The parties in that action later amended the filings to add Greg and Michelle Nunley, Nunley Racing LLC, Great Valley Builders, and La Tula Investments (collectively, "Nunley Defendants") as defendants to either the original complaint or Score International's subsequent cross-complaint. (Defs.' RJN, Exs. J-N; Def. Bragg's Mot. Dismiss or Stay at 3.)  Numerous other parties were also added to the action, but they are not currently parties to this case. (Id.)

Plaintiff is an insurer with whom Greg and Michelle Nunley have an insurance contract. (Nunley Defs.' Mem. P. & A. at 1.)  It is defending the Nunley Defendants in the state action. (Id.)  It has filed this action in federal court seeking a declaration that it is not required to defend or indemnify any of the defendants in the state action. (Id. at 1-2; Compl. generally.)  Plaintiff's Complaint alleges that "there is no coverage available" under the insurance policy because of several "exclusions" to coverage

2

provided for in the contract.  (Compl. at ¶¶ 12, 15, 18, 21, 24, 27, 30, 33, 36.)

II.  **LEGAL STANDARD**

Where a plaintiff seeks solely declaratory relief in a matter related to a pending state court action, it is within the district court's discretion to dismiss or stay the federal action.  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995).  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  <u>Id.</u>

"The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation.  If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court. The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief.  Nonetheless, federal courts should generally decline to entertain reactive declaratory actions."  <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 (9th Cir. 1998) (citations omitted).

The district court may also consider "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a

3

'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." Id. at 1225 n.5 (quoting American States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir.1994) (J. Garth, concurring)).

**III. ANALYSIS**

**A.   Second through Fourth and Sixth through Ninth Causes of Action**

Plaintiff agrees that a stay would be appropriate as to these causes of action, "in order to protect [the] insured from the risk of being bound in the underlying lawsuit by findings of fact that are made in the declaratory judgment action." (Opp'n at 3:13-18.) Thus, Plaintiff seeks, at this time, only to have its First and Fifth Causes of Action litigated.  Plaintiff also argues that even litigating only those two causes of action would effectively end the case. (Id. at 16:4-6.)  Thus, Plaintiff does not make substantive arguments in favor of hearing the other seven causes of action at this time.

The Nunley Defendants and Defendant Bragg both argue against a partial stay, because even a partial stay would "foster piecemeal litigation" and force Defendants to engage in a "two-front war," litigating this case and the underlying state case at the same time. (Bragg's Reply at 5:7-14; Nunley Defs.' Reply at 9:11-12.)

**B.   First and Fifth Causes of Action**

Plaintiff urges the Court not to dismiss or stay the First and Fifth Causes of Action.  According to Plaintiff, both rest on substantially the same question, although they refer to Exclusion 9

4

of the Motor Vehicle Protection section of the policy and Exclusion 12 of the Personal Umbrella Coverage section, respectively ("Exclusion 9" and "Exclusion 12"). (Compl., ¶¶ 12, 24.) This is because Exclusions 9 and 12 contain nearly identical language excluding coverage for the "ownership, maintenance, or use" of motor vehicles, subject to certain exceptions.[1] According to Plaintiff, the only relevant exception is the exception for a "motor vehicle you maintain or regularly use which is: (1) Owned by a family member and not shown in the Coverage Summary; or (2) Furnished or available for the regular use of a family member." (Opp'n at 3-8; Compl., Ex. 1, at ENC38.) Plaintiff asks for a ruling on the question of whether the truck was "owned by, or furnished or available for the regular use of, a 'family member.'" (Opp'n at 4:15-18.) This, claims Plaintiff, is "an issue of pure law that will not be addressed or decided in the underlying lawsuit." (Id. at 5:1-2.) Thus, the resolution of the First and Fifth Causes of Action would not prejudice the parties in the underlying case or create a danger of factual findings inconsistent with the findings of the state court. (Opp'n at 5-8.)

   Defendants counter that ruling on the First and Fifth Causes of Action involves substantially more than resolving "an issue of pure law," because even Plaintiff admits that such a ruling would require the Court to make at least eight factual determinations.

---

[1] The Court notes that although Plaintiff attaches a copy of the policy as Exhibit 1 to the Complaint, the copy appears to be incomplete – the Court is unable to find Exclusion 9 to the Motor Vehicle Protection portion of the policy anywhere in the exhibit as filed. The Court will therefore confine its analysis largely to Exclusion 12 and assume, as Plaintiff has indicated, that the two Exclusions are substantially the same.

5

(Nunley Defs.' Reply at 10-13; Opp'n at 5.)  Defendants argue that five of the eight facts are in dispute, are not easily established, and cannot be stipulated to.  (Nunley Defs.' Reply at 11; Bragg Reply at 2.)  Defendants' position is that all causes of action, including the First and Fifth, should be stayed or dismissed.

To determine whether Plaintiff's request to litigate only the First and Fifth Causes of Action should be granted, the Court weighs the factors listed by the Dizol court.  See Part II, supra.  Where relevant, the Court also considers some of the additional factors listed by Judge Garth in Kearns.  Id.

**1.  Needless Determination of State Law Issues**

Federal courts adopt a generally deferential approach to state law.  Although the diversity jurisdiction statute and the Declaratory Judgments Act give district courts the authority to make determinations of state law in some circumstances, for reasons of both consistency and federalism it is preferable that state courts make determinations of state law where practical.  Indeed, even when "there is no great need for state court resolution of an open question of state law," a federal court may decline jurisdiction over a declaratory judgment action in the interest of resolving the issue at the state level.  Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 804 (9th Cir. 2002).  This is especially the case where "an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence."  Am. Nat. Fire Ins. Co. v. Hungerford, 53 F.3d 1012, 1017 (9th Cir. 1995) overruled as to other matters by Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220 (9th Cir. 1998).

Moreover, where there is a state law mechanism for providing declaratory relief, the balance tips in favor of letting the state court do so. Cal. Civ. Proc. Code § 1060 provides such a mechanism, allowing "[a]ny person interested under a written instrument" to seek "a declaration of his or her rights or duties with respect to another." In <u>Hungerford</u>, the court noted that allowing an insurer to bring an action for declaratory judgment at the federal level when a perfectly sufficient state mechanism existed "would simply result in a waste of federal resources at every level of the decision making process" and "would result in the federal district court needlessly analyzing a state law issue." 53 F.3d at 1018. The court further noted that if the cases went to appeal, it would "also lead to the state and federal appellate courts reviewing claims arising from an identical set of facts even though the cases can easily be consolidated if filed within the same court." <u>Id.</u> This set of factors weighs in favor of the Defendants' position.[2]

**2. Forum Shopping, Procedural Fencing, and Reactive Declaratory Judgment Actions**

The <u>Dizol</u> court instructed district courts to discourage "forum shopping" and "reactive actions," and Judge Garth similarly counseled courts to be on guard against the use of federal actions in "procedural fencing." All these factors address essentially the

---

[2] Where the relief sought is solely declaratory in nature, "needless determination of state law issues alone may support" declining jurisdiction. <u>R.R. St. & Co. Inc. v. Transp. Ins. Co.</u>, 656 F.3d 966, 975 (9th Cir. 2011). However, the Ninth Circuit also instructs that the district court should "make a sufficient record of its reasoning to enable appropriate appellate review." <u>Dizol</u>, 133 F.3d at 1225. Thus, the Court continues with the analysis of other factors.

7

same concern: the anticipatory use of a federal court as a more friendly or convenient forum in an action that would otherwise be litigated elsewhere. The archetypal example of forum shopping is an action filed "under the apparent threat of a presumed adversary filing the mirror image of that suit in another court." Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297, 301 (4th Cir. 2001) (quoting Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000)). The archetypal "reactive" declaratory judgment action "occur[s] when a party sues in federal court to determine their liability after the commencement of a state court action." Gemini Ins. Co. v. Clever Const., Inc., No. CV. 09-00290 DAE-BMK, 2009 WL 3378593, at *8 (D. Haw. Oct. 21, 2009). Thus, where an insured party files, or is about to file,[3] a state court action for declaratory judgment that the insurer must defend or indemnify her in some underlying claim, an insurer's attempt to leap to federal court implicates these concerns.

    Here, however, no insured party has filed for declaratory relief on this subject. There is no concern about Plaintiff seeking a more advantageous forum for an action that already exists or looms on the horizon. Moreover, the federal forum is not distant from the place the underlying action is being litigated, or otherwise inconvenient, so that this does not appear to be the sort of "procedural fencing" courts should guard against. This set of factors does not weigh in favor of Defendants' position.

---

[3] "[T]he order of filing is legally insignificant . . . ." Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 804 (9th Cir. 2002).

8

**3.   Duplicative Litigation, Parallel State Proceedings, and Res Judicata**

The court should also be on guard against creating duplicative litigation – especially ruling on the same issues of fact that are being adjudicated in state court. This is in part because doing so undermines judicial economy and wastes resources, but mostly it is because of the danger of creating findings of fact that provide the party seeking declaratory judgment with what Judge Garth called "'res judicata' advantage" in another court. Kearns, 15 F.3d at 145. In other words, the Court should be reluctant to decide the facts of the state court action before the state court can do so.

In this case, as noted above, Plaintiff frames its First and Fifth Causes of Action as involving solely questions of law. But this is not so: Plaintiff itself identifies at least eight factual predicates to the declaratory relief it seeks (the non-availability of coverage). Some of these, especially related to ownership, use, and control of the vehicle, go to the heart of the underlying action. In the original complaint in the state action, for example, the Erikssons assert that Bragg was using the truck with the knowledge and permission of Defendant Driven Motorsports and certain unknown "Does" (later added as, collectively, the Nunley Defendants), and that Driven and the "Does" negligently entrusted the vehicle to her. (Nunley Defs.' RJN, Ex. A, ¶¶ 2, 17, 30-35.) These are particular allegations about who controls or owns the truck. Moreover, the facts regarding ownership and control are neither uncontested nor simple: the state complaint suggests that Driven had control of the truck, but the Nunley Defendants allege that title is held jointly by Michelle Nunley and Great Valley

9

Builders. (Nunley Defs.' Reply at 12:10.) Bragg alleges that "there is evidence to suggest that the truck was not furnished for regular use by Mr. Nunley." (Bragg Reply at 7:4-5.) On the other hand, it might well have been furnished for regular use by his family members; the parties are still determining what other individuals may have had use of the truck at the race event. (Id. at 7:9-18.)

Because disposing of the First and Fifth Causes of Action requires not just determinations of state law, but questions of fact that overlap with key questions in the state action, this set of factors weighs in favor of Defendants' position.

**4.   Resolution of the Entire Controversy**

Finally, Judge Garth's opinion in Kearns encourages courts to consider "whether the declaratory action will settle all aspects of the controversy." 15 F.3d at 145. Plaintiff appears to argue that it will, because "once the court determines that a named insured cannot be his or her own family member, the controversy will be resolved in its entirety." (Opp'n at 16:5-6.)

Plaintiff seems to misconstrue Judge Garth's point. Clearly any declaratory action settles itself; the question is whether it could act to settle the *underlying* action. If it could, judicial economy might be served, and the benefit to the state court system might outweigh the dangers inherent in the federal court making needless determinations of state law. This action, however it might be resolved, would certainly not settle all aspects of the underlying case, which is a tort case separate from (though sharing factual underpinnings with) the question of insurer liability.

10

Even if the Court were to read this factor as Plaintiff does, it cannot say that resolving the First and Fifth Causes of Action would resolve even all aspects of *this* action. If Plaintiff loses on these two causes of action, the Court and the parties would still have seven more causes of action to address later. And even if Plaintiff wins on the narrow question of whether the "family member" exceptions to Exclusions 9 and 12 apply, that does not *necessarily* mean that Exclusions 9 and 12 act to release Plaintiff from its liability to defend and indemnify some or all of the Nunley Defendants. There may be other exceptions to those exclusions which fit the facts of the case. For example, there are exceptions to Exclusion 12 for "[a] motor vehicle . . . you acquire during the policy period, if it is covered by an underlying policy," "[a]ny motor vehicle used as a temporary substitute for a motor vehicle of the same type shown in the Coverage Summary," and "[a]n automobile only for you or a family member, not owned by or furnished or available for the regular use of you or any family member." (Compl., Ex. 1 at ENC38-39.) Indeed, it is not even clear on the face of the partial policy document available to the Court (see note 1, supra) whether a finding that one Exclusion applies would nullify the effect of an exception to another Exclusion. To the extent that the policy might be ambiguous, of course, "ordinary principles of insurance contract interpretation [would] require[] it be construed in the insured's favor, according to his reasonable expectations." Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 299 (1993). It is therefore far from clear that even *this* action could be concluded solely on Plaintiff's narrowly-defined questions.

11

Thus, this factor is either neutral or favors Defendants' position.

**5.   Balance of the Factors**

Taken all together, the factors outlined in Dizol/Kearns favor not resolving the First and Fifth Cause of Action by themselves at this time.

**C.   Dismissal or Stay**

Defendants ask for a dismissal or, in the alternative, a stay of all proceedings until the conclusion of the underlying state court action.  The Court finds that the most appropriate course of action is to dismiss without prejudice.

**IV.   CONCLUSION**

The Complaint is hereby DISMISSED WITHOUT PREJUDICE.


IT IS SO ORDERED.


Dated: December 8, 2014

DEAN D. PREGERSON
United States District Judge

12